# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TYSHAUN POPE, | : | |
| | : | |
| Petitioner, | : | Civ. No. 3:16-cv-8893 (BRM) |
| | : | |
| v. | : | |
| | : | |
| THE ATTORNEY GENERAL OF THE | : | **OPINION** |
| STATE OF NEW JERSEY, et al., | : | |
| | : | |
| Respondents. | : | |
| | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a writ of habeas corpus filed by Petitioner Tyshaun Pope ("Petitioner"), a state prisoner proceeding *pro se* with a petition filed pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is **DENIED** and a certificate of appealability shall not issue.

## I.    BACKGROUND

On September 14, 2009, Petitioner conspired with Terrell Majette ("Majette") to steal cocaine from another individual named Herman Neely. *See* ECF No. 8-5 at 13-14. During his plea colloquy, Petitioner stated he had been armed with a gun and that he intended to use it to place the victim in fear during the commission of the crime. *See id.* at 16-17. Although the robbery never occurred, Petitioner was ultimately still apprehended by law enforcement and he provided a statement indicating his role in conspiracy. *See id.* at 18. Petitioner and Majette were subsequently indicted, under Indictment Number 10-05-0894, for: conspiracy, in violation of N.J. Stat. Ann. § 2C:5-2 and § 2C:15-1; unlawful possession of a weapon, in violation of N.J. Stat. Ann. § 2C:39-5b; possession of a weapon for an unlawful purpose, in violation of N.J. Stat. Ann. § 2C:39-4a; attempted armed robbery, in violation of N.J. Stat. Ann. § 2C:15-1 and § 2C:5-1; attempted possession of a controlled dangerous substance, in violation of N.J. Stat. Ann. § 2C:5-1 and

§ 2C:23-10a(1); obstructing the administration of law or other governmental function, in violation of N.J. Stat. Ann. § 2C:29-1; and certain persons not to have weapons, in violation of N.J. Stat. Ann. § 2C:39-7b(1). *See* ECF No. 8-3.

A few months later, on December 12, 2009, Petitioner was in Neptune Township, New Jersey, when two police officers observed Petitioner making a hand-to-hand drug transaction with another individual. *See* ECF No. 8-24 at 9. When the officers approached Petitioner and indicated they believed he may have an outstanding warrant, Petitioner admitted, "I know I do." *See id*. One of the officers, Officer Byham, then told Petitioner that if the warrant was confirmed, "[Petitioner] better not have any drugs on him." *See id*. Petitioner immediately confessed to having a "package" between his buttocks. *See id*. Petitioner was arrested and transported to police headquarters where he was strip searched. *See id*. During the strip search, when Petitioner was asked to remove his pants, a plastic bag containing eighteen (18) bags of cocaine fell to the ground. *See id*. Petitioner was subsequently indicted, under Indictment Number 10-03-0437, for: possession of a controlled dangerous substance, in violation of N.J. Stat. Ann. § 2C:35-10a(1); possession of a controlled dangerous substance with intent to distribute, in violation of N.J. Stat. Ann. § 2C:35-5b(3); and possession of a controlled dangerous substance on or within 1,000 feet of school property with intent to distribute, in violation of N.J. Stat. Ann. § 2C:35-7. *See* ECF No. 8-2.

On July 19, 2010, Petitioner entered into a plea agreement with the State. *See* ECF Nos. 8-4, 8-5. Under Indictment Number 10-03-0437, Petitioner pleaded guilty to possession of cocaine with intent to distribute within 1,000 feet of school property, and under Indictment Number 10-03-0894, Petitioner pleaded guilty to conspiracy to commit armed robbery and certain persons not to have firearms. *See* ECF No. 8-4 at 1. The State agreed to dismiss the remaining counts charged in the indictments and to recommend an aggregate term of ten (10) years imprisonment, subject to

an eight-and-one-half (8 ½) year period of parole ineligibility. *See id*. at 3. Petitioner's sentencing recommendation was contingent upon his truthful testimony at the trial of his co-conspirator, Majette. *See id*.

Although Petitioner testified at the trial of Majette, he failed to provide truthful testimony. *See* ECF No. 8-9 at 6-7, 26-27. Majette's trial ended in a hung jury. *See* ECF No. 8 at 10. Petitioner thereafter filed a motion to withdraw his guilty plea, based upon the fact that the prosecutor believed he had provided untruthful testimony at Majette's trial and based upon Petitioner's belief that he had provided an inadequate factual basis for his crimes during his plea colloquy. *See* ECF Nos. 8-6, 8-7. The sentencing court ultimately denied Petitioner's motion to withdraw his guilty plea and sentenced him to an aggregate term of ten (10) years in prison, subject to an eight-and-one-half (8 ½) year period of parole ineligibility, as well as various fines and penalties. *See* ECF No. 8-9 at 26, 33-35.

## II.     PROCEDURAL HISTORY

On appeal to the New Jersey Appellate Division, Petitioner challenged only his ten (10) year sentence. *See* ECF No. 8-23 at 45. On August 1, 2012, the Appellate Division denied Petitioner's appeal, and held that the sentence was not "manifestly excessive or unduly punitive and does not constitute an abuse of discretion." *See id*. Petitioner thereafter filed a petition for certification to the New Jersey Supreme Court. *See id*. at 46. Petitioner's certification was denied. *See id*.

On May 29, 2013, Petitioner filed a *pro se* petition for Post-Conviction Relief ("PCR") with the Superior Court of New Jersey, Law Division. *See* ECF No. 8-18. In his application, Petitioner raised numerous claims, including several ineffective assistance of counsel claims. *See* ECF No. 8-21. Following oral argument from both defense counsel and the State, the PCR court

denied Petitioner's application. *See* ECF Nos. 24, 25. Petitioner appealed the denial to the New Jersey Appellate Division. *See* ECF No. 8-26. On March 29, 2016, the Appellate Division denied Petitioner's appeal, and affirmed the PCR court's decision. *See State v. Pope,* A-1429-14T2, 2016 WL 1192616 (N.J. Super. Ct. App. Div. Mar. 29, 2016). Petitioner subsequently appealed to the New Jersey Supreme Court. *See* ECF No. 8-32. His petition for certification was denied on June 24, 2016. *See State v. Pope*, 141 A.3d 229 (2016).

In November 2016, Petitioner filed the instant Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* ECF No. 1. Subsequent to this Court's order directing Petitioner to provide sufficient factual and contextual support for the claims he raised in his first petition, Petitioner filed an amended Petition in April 2017. *See* ECF No. 5. On July 24, 2017, Respondent filed an answer in opposition. *See* ECF No. 8. Petitioner thereafter filed a brief in reply. *See* ECF No. 12.

### III. HABEAS CORPUS LEGAL STANDARD

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws or treaties of the United States. *See Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also Mason v. Myers*, 208 F.3d 414, 415 n.1 (3d Cir. 2000) (citing 28 U.S.C. § 2254). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, and therefore, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104–132, 110 Stat. 1214 (Apr. 24, 1996), applies. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted

in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d).

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle set forth by the Supreme Court at the time the state court renders its decision." *Id.* (citations omitted). A federal habeas court making an unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *See Williams v. Taylor*, 529 U.S. 362, 409 (2000). Therefore, "a federal court may not issue a writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 411. Federal courts

> may not characterize [] state-court factual determinations as unreasonable 'merely because [they] would have reached a different conclusion in the first instance.' [. . .] If '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'"

*Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015) (alterations in original) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

The AEDPA standard under § 2254(d) is a "difficult" test to meet and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The petitioner carries the burden of proof and with respect to review under § 2254(d)(1), that review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.*

In applying AEDPA's standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008). Furthermore, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 353 n.10 (3d Cir. 2016) (Jordan, J., concurring in part and concurring in the judgment) (noting that while *Ylst* predates the passage of AEDPA, the *Ylst* presumption that any subsequent unexplained orders upholding the judgment will be presumed to rest upon the same ground is still valid). Additionally, AEDPA deference is not excused when state courts issue summary rulings on claims as "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011) (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

## IV. DECISION

Petitioner's habeas application raises two claims of ineffective assistance of trial counsel. Under the Sixth Amendment of the United States Constitution, a defendant "[i]n all criminal prosecutions, [] shall enjoy the right … to have the Assistance of Counsel for his defense." U.S. Cont. amend. VI. The Supreme Court has recognized that "the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson,* 397 U.S. 759, 771 n.14 (1970)). To prevail on a claim of ineffective assistance, a petitioner must establish that: 1) counsel's performance was deficient; and 2) the petitioner was prejudiced by counsel's deficiency. *See id.* at 687. The first *Strickland* prong is an

objective standard which requires the petitioner to show that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. In evaluating whether counsel was deficient, "the proper standard for attorney performance is that of reasonably effective assistance." *Id.* The Constitution requires a fair trial, not some higher quality of legal representation. *See id.* at 688-89. Thus, the standard is highly deferential, and counsel is "strongly presumed to have rendered adequate assistance" and to have used "reasonable professional judgment." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016).

The second prong of the *Strickland* test requires that a petitioner demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The petitioner bears the burden of demonstrating how he was prejudiced. Thus, where a petition contains "no factual matter [. . .] and only provides unadorned legal conclusion[s] . . . without supporting factual allegations, that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief." *Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015) (internal quotations and citations omitted).

This two-prong test also governs ineffective assistance of counsel claims arising out of the plea process. *See Hill v. Lockhart,* 474 U.S. 52, 57-59 (1985). In the context of guilty pleas, the first element of the *Strickland* test remains "nothing more than a restatement of the standard of attorney competence." *Id.* at 58. The prejudice prong, on the other hand, requires that a petitioner demonstrate that, "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. Moreover, where a petitioner pleads guilty, he must show not only that he would not have pleaded guilty and would

have instead proceeded to trial, but also that "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

### A. Failure to Investigate

Petitioner's first ineffective assistance claim alleges that trial counsel failed to conduct an adequate investigation into his case. *See* ECF No. 5 at 5. Specifically, Petitioner alleges that counsel failed to interview the intended victim of Petitioner's conspiracy to commit armed robbery charge, Mr. Neely, before Petitioner entered into a plea agreement with the State. *See id.*; *see also* ECF No. 8-21 at 11-15. Petitioner alleges that if trial counsel had interviewed Mr. Neely, Mr. Neely would have testified that "no crime occurred." *See* ECF No. 5 at 5. Petitioner alleges that trial counsel could have then "moved for dismissal." *See id.*

In denying this claim, the PCR court held that Petitioner's argument was no more than a bald assertion. The PCR court held, in relevant part:

> When evaluating possible defenses to criminal charges counsel has a duty to make a reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary. In any effectiveness case a particular decision not to investigate must be directly assessed for reasonableness in all circumstances applying a heavy measure of deference to counsel's judgments. State versus Cooper, 410 NJ Super 43 at 58 (Appellate Division 2009) certification denied 101 NJ 155 (2010) quoting Strickland at 466 US pages 690 to 91.
>
> To establish prejudice on the basis of an inadequate pretrial investigation of potential witnesses a defendant "must assert the facts that would have been revealed supported by affidavits or certifications based upon the personal knowledge of the witness." State versus Petrozelli, 351 NJ Super 14 at 23 (Appellate Division 2002) quoting State versus Cummings, 321 NJ Super 154 at 170 (Appellate Division 1999) certification denied 162 NJ 199 (1999).
>
> In the present case the defendant has not alleged what further investigation of the victim would have revealed. See the defendant's brief, page 10 to 14.

Additionally, the defendant has failed to set forth any credible evidence in the form of affidavit or certification relating to what the alleged victim would have testified to. Instead the defendant merely speculates that if his counsel had sought out the victim then perhaps the victim would have been unavailable to testify and thus the State might have offered him a better plea deal or dismissed the charges. See defendant's brief, page 19.

Therefore the defendant's claim is merely speculation and amounts only to a bold assertion of innocence [sic]. As such the defendant's claim does not demonstrate that his trial counsel was unreasonable or ineffective.

ECF No. 8-24 at 8-9.

On appeal, the Appellate Division summarily denied Petitioner's claim, stating only that Petitioner had "failed to present a prima facie case of ineffective assistance of counsel based on his PCR petition" and that the PCR court had "correctly rejected defendant's PCR petition for the reasons stated in [the PCR court's] opinion." *See Pope*, 2016 WL 1192616, at *2.

Under federal law, a failure to investigate potentially exculpatory evidence or witnesses may form the basis of ineffective assistance of counsel. *See Strickland,* 466 U.S. at 690-91; *see also Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016). To successfully establish this claim, a petitioner "must make a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained ... and whether such information, assuming admissibility in court, would have produced a different result." *See Brown*, 2016 WL 1732377, at *5 (quoting *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (internal quotation marks omitted)). The petitioner must also still demonstrate that he suffered prejudice. *See Strickland*, 466 U.S. at 690-91. But, where a petitioner merely speculates as to what a witness might have said if interviewed by counsel and does not present sworn testimony from that witness, a petitioner will not be able to establish the

prejudice prong of *Strickland*. *See Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001) (citing *United States v. Gray*, 878 F.2d 702, 712 (3d Cir. 1989)).

Here, Petitioner has provided only a conclusory allegation that the intended victim would have testified that "no crime occurred." *See* ECF No. 5 at 5. Petitioner has not provided any sworn testimony, affidavit, or certification from Mr. Neely. *See id*. Petitioner's mere speculation regarding Mr. Neely's testimony is insufficient to establish prejudice. *See Duncan*, 256 F.3d at 201-02.

Significantly, even if trial counsel had spoken with Mr. Neely, Petitioner has not demonstrated that Mr. Neely's testimony, assuming admissibility in court, would have produced a different result. *See Brown*, 2016 WL 1732377, at *5. Petitioner was indicted for the crime of conspiracy to commit armed robbery, contrary to N.J. Stat. Ann. § 2C:5-2 and § 2C:15-1, not for the completion of that crime. *See* ECF No. 8-3 at 1. Under New Jersey state law, inchoate criminal behavior is "designed to culminate in the commission of a substantive offense but has … *not yet achieved its culmination* because something remains to be done." *State v. Harmon,* 516 A.2d 1047, 1054 (N.J. 1986) (emphasis added). Since Petitioner was not indicted the crime of armed robbery itself, his intended victim's testimony was not necessary for the State to prove each element of conspiracy. Rather, the State needed only to prove that Petitioner agreed with another individual that they would "engage in conduct which constitutes a crime", and that Petitioner's purpose in doing so was to "promote or facilitate the commission of the crime." *See* New Jersey Model Jury Charges (Criminal), "Conspiracy (N.J.S.A. 2C:5-2)" (revised April 12, 2010). In fact, the State did proceed to trial against Petitioner's co-conspirator Majette without Mr. Neely's testimony. *See* ECF No. 8 at 26. Thus, even if trial counsel interviewed Mr. Neely and he stated that "no crime occurred," this would likely not have affected Petitioner's charge for conspiracy.

Accordingly, Petitioner cannot demonstrate that he was prejudiced by trial counsel's alleged failure to investigate the intended victim, nor can he demonstrate that the state court's adjudication was an unreasonable application of clearly established federal law. Petitioner is not entitled to relief on this claim.

### B. Failure to File Suppression Motion

Petitioner's second claim of ineffective assistance alleges merely that his "[c]ounsel was also ineffective for failing to file [a] suppression motion." *See* ECF No. 5 at 5. Although Petitioner does not elaborate further, it appears Petitioner is attempting to raise the same claim that he did during his PCR proceedings – that trial counsel should have filed a motion to suppress the eighteen (18) bags of crack cocaine that were discovered during a strip search of his person. *See* ECF No. 8-21 at 15; *see also* ECF No. 8-24 at 9.

In denying this claim, the PCR court held, in pertinent part:

> In the present case the defendant was subject only to a strip search. At the police headquarters the defendant was instructed to remove his pants, at which time the bag containing 18 smaller bags of crack cocaine fell to the floor. The officers never performed an inspection of the defendant's anal cavity, thus a strip search and not a body cavity search was conducted upon the defendant.
>
> Additionally, because the defendant admitted to having a "package" between his buttocks the officers were justified in conducting the strip search. Since a strip search is permissible when performed pursuant to an arrest for a crime the search was constitutionally proper. NJSA 2A:161A-3a.
>
> Therefore, a motion to suppress the 18 bags of crack cocaine would have been meritless. As such, the defendant's trial counsel was not ineffective for failing to file the motion to suppress the crack cocaine.

ECF No. 8-24 at 10.

On appeal from the PCR court's denial, the Appellate Division stated simply that Petitioner's argument was "without sufficient merit to warrant discussion." *See Pope*, 2016 WL 1192616, at *2. The court did comment, however, that Petitioner had failed to present a prima facie case of ineffective assistance of counsel, and that the PCR court had correctly rejected Petitioner's PCR. *See id.*

Where a petitioner challenges counsel's "failure to litigate a Fourth Amendment claim," such as the failure to file a suppression motion, a petitioner must prove not only both prongs of the *Strickland* test, but he must also prove that his Fourth Amendment claim is meritorious. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). It is not considered objectively unreasonable for counsel to have declined to bring a suppression motion where the motion is "plainly without merit." *See Thomas v. Varner*, 428 F.3d 491, 502 (3d Cir. 2005).

Under the Fourth Amendment, individuals are protected against "unreasonable searches and seizures." *See* U.S. Const. amend. IV. However, this rule is subject to certain well-delineated exceptions, including searches conducted pursuant to a lawful arrest. *See Arizona v. Gant*, 556 U.S. 332, 338 (2009) (citing *Weeks v. United States,* 232 U.S. 383, 392 (1914)). A search incident to a lawful arrest permits a full search of the person, which may "'involve a relatively extensive exploration of the person.'" *See United States v. Robinson*, 414 U.S. 218, 227 (1973) (quoting *Terry v. Ohio*, 392 U.S. 1, 25-6 (1968)).

To determine whether a strip search has violated an individual's Fourth Amendment right, the proper inquiry is whether the search was reasonable under the circumstances. *See Bell v. Wolfish*, 441 U.S. 520, 558-59 (1979) ("In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification

for initiating it, and the place in which it is conducted."). Although "[n]o Supreme Court case discusses the constitutionality of strip searches incident to arrest, which appear to fall between the 'full searches' considered by *Robinson* and the 'intrusions beyond the body's surface,'" several of the Circuit Courts of Appeals have found that "to be reasonable under *Wolfish*, strip … searches must be justified by at least a reasonable suspicion that the arrestee is concealing contraband." *United States v. Clemons*, Crim. No. 08-28, 2010 WL 597992, at \*4 (W.D. Pa. Feb. 17, 2010), *aff'd*, 499 F. App'x 207 (3d Cir. 2012). The standard for reasonable suspicion has been articulated as "'a particularized and objective basis' for suspecting the person stopped of criminal activity." *See Ornelas v. United States*, 517 U.S. 690, 695-96 (1996) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). This is a lesser standard than probable cause which requires the "known facts and circumstances" to be "sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *See id.*

Here, Officer Byham had more than sufficient reasonable suspicion that Petitioner was hiding contraband. Not only did Officer Byham observe Petitioner make a hand-to-hand drug transaction, but Petitioner also explicitly told Officer Byham that he was concealing drugs between his buttocks. *See* ECF No. 8-23 at 56 ("Mr. Pope then confessed to [Officer Byham] that he was holding a 'package' (unknown amounts of narcotics) in his ass."). Such an admission was clearly capable of producing more than adequate reasonable suspicion to justify Officer Byham's search of Petitioner. *See Clemons*, 2010 WL 597992, at \*4. It must also be noted that Officer Byham did not search Petitioner's person until after Petitioner had already been arrested and taken to police headquarters. *See* ECF No. 8-21 at 15. Accordingly, the strip search of Petitioner was a search incident to a lawful arrest and was justified by Officer Byham's reasonable suspicion that Petitioner was concealing contraband. Consequently, Petitioner is unable to demonstrate that if

his trial counsel had filed a motion to suppress the search of his person, that the motion would have been meritorious. *See Kimmelman*, 477 U.S. at 375. Petitioner, likewise, cannot demonstrate that the state courts' adjudication of this claim was an unreasonable application of, or contrary to, clearly established federal law. Petitioner is not entitled to relief on this claim.

## V.   CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right."  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further."  *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Because jurists of reason would not disagree with this Court's conclusion that Petitioner fails to make a substantial showing of the denial of a constitutional right, Petitioner's habeas petition is inadequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability shall not issue.

## VI.   CONCLUSION

For the reasons stated above, the Petition for habeas relief is **DENIED**, the motion for an evidentiary hearing is **DENIED**, and a certificate of appealability shall not issue.


DATED: January 10, 2020                          */s/Brian R. Martinotti*
                                                 **HON. BRIAN R. MARTINOTTI**
                                                 **UNITED STATES DISTRICT JUDGE**